FILED
5/21/26 2:01 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Case No. 18-22681-GLT |
| | : | Chapter 13 |
| **BRIAN L. DECERB**, | : | |
| | : | |
| *Debtor*. | : | Related to Dkt. Nos. 191, 194, 201 |
| | : | |

| | |
|---|---|
| Brian C. Thompson, Esq. | Ronda J. Winnecour, Esq. |
| Thompson Law Group, P.C. | Owen Katz, Esq. |
| Cranberry Township, PA | Office of the Chapter 13 Trustee |
| *Attorney for the Debtor* | Pittsburgh, PA |
| | *Attorneys for the Chapter 13 trustee* |

### MEMORANDUM OPINION

Having failed to complete his chapter 13 plan in extra innings, debtor Brian L. DeCerb now seeks to vacate dismissal a month later and make a final curative payment.[1]  With the money in hand, the chapter 13 trustee does not oppose the relief.  Nevertheless, the Court finds that the Debtor has not demonstrated any basis for reconsideration given the substantial grace period he was already afforded before the case was dismissed.

### I.    BACKGROUND

On August 6, 2025, after the expiration of the Debtor's 84-month plan term,[2] the chapter 13 trustee moved to dismiss the case based on a $33,248 arrearage.[3]  The Debtor promptly responded that he was "contemplating various ways to pay the base balance, including the exempt proceeds . . . related to a personal injury claim."[4]  The Court conducted an initial

---

[1]    See *Amended Motion to Reconsider Dismissal of Case*, Dkt. No. 201.

[2]    The Debtor was able to extend his plan term beyond sixty-months pursuant to section 1329(d), a temporary provision added to the Code by the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020).

[3]    *Trustee's Motion to Dismiss*, Dkt. No. 172 at ¶¶ 2-3, 9.  The Trustee alleged that the Debtor failed to make certain lump sum payments throughout the life of the confirmed plan.  Id. at ¶ 5.

[4]    *Debtor's Response to Trustee's Motion to Dismiss*, Dkt. No. 174 at ¶ 12.

hearing on September 15, 2025, where the Debtor explained substantial health issues impacted his ability to make the lump sum payments.  The Court continued the hearing for about a month to afford the Debtor an opportunity to formulate a reasonable proposal to cure the plan arrearage. Meanwhile, regular wage attachment remittances continued.

On September 25, 2025, the Debtor reported that he had "begun the process of cashing out his retirement account" to complete the plan.[5]  Shortly after a late October hearing, the Debtor added that the account manager "requested additional documentation" and that it will take "14 days to complete the process" once those documents are received.[6]  At a third continued hearing on December 23, 2025, counsel represented that the withdrawal had been approved and the "check will be in the mail any day."[7]  The Court continued the hearing one final time, warning that it had reached the limit of its discretion to allow a late curative payment under controlling precedent.

By the January 14, 2026 hearing, the Debtor had reduced the arrearage to about $11,612 through continued wage attachment but had not made a curative payment.[8]  Instead, counsel explained that the Debtor received a disbursement letter indicating that a check would be sent roughly a week after January 31, 2026.  In support, he filed a screenshot of the purported disbursement letter without any identifying information, leaving the Court unable to determine its authenticity.[9]  Given that the curative payment was still at best a month away (if at all), the Court granted the trustee's motion and dismissed the case.

---

[5]     *Status Report*, Dkt. No. 180 at ¶ 5.

[6]     *Status Report*, Dkt. No. 183 at ¶ 7.

[7]     *Audio Recording of December 23, 2025 Hearing* at 9:07:14-9:07:45 a.m.

[8]     The trustee also noted that the Debtor had yet to authorize her to apply $1,715.72 of exempt settlement proceeds on hand to the arrearage.

[9]     *Exhibit A*, Dkt. No. 189.

A month later, the Debtor filed a motion to reconsider the dismissal simply asserting that a curative payment was finally remitted to the trustee in what was effectively month 92.[10]  During a hearing on the motion, the Court pressed the Debtor to articulate a basis for reconsideration.  The Debtor suggested his delay was excusable neglect arising from the administrative difficulties in obtaining the retirement funds.  The Court took the matter under advisement and, the following day, the Debtor filed an amended motion outlining theories for reconsideration under Fed. R. Civ. P. 60(b)(1) and (b)(6) ("Rule 60(b)").[11]

## II.    JURISDICTION

This Court has authority to exercise jurisdiction over the subject matter and the parties under 28 U.S.C. §§ 157(a), 1334, and the Order of Reference entered by the United States District Court for the Western District of Pennsylvania on October 16, 1984.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## III.    DISCUSSION

Motions for reconsideration are not recognized by the Federal Rules of Civil Procedure, but requests filed more than 14 days after the order are generally considered under Rule 60(b).[12]  To prevail under this rule, the movant must establish at least one of the six enumerated grounds for relief:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud    (whether    previously    called    intrinsic    or    extrinsic), misrepresentation, or misconduct by an opposing party;

---

[10]    *Motion to Reconsider Dismissal of Case*, Dkt. No. 194 at ¶ 4.

[11]    *Amended Motion to Reconsider Dismissal of Case*, Dkt. No. 201.

[12]    See Grigg v. Chaney (In re Grigg), No. ADV 12-7008-JAD, 2013 WL 5310207, at *1-2 (Bankr. W.D. Pa. Sept. 20, 2013).  Rule 60(b) is made applicable to bankruptcy cases by Fed. R. Bankr. P. 9024.

3

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on
an earlier judgment that has been reversed or vacated; or applying it
prospectively is no longer equitable; or

(6) any other reason that justifies relief.[13]

"It is well settled that a motion for reconsideration seeks an extraordinary remedy that upsets the finality of a decision and therefore should be granted only sparingly."[14]

Here, the Debtor suggests that relief from dismissal is warranted by excusable neglect under subsection Rule 60(b)(1) or Rule 60(b)(6). In *Pioneer Investment Services v. Brunswick Assoc.*,[15] the Supreme Court of the United States held that "neglect" "encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness."[16] It concluded that whether a party's neglect is "excusable" is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission."[17] Factors informing the court's analysis include, but are not limited to: (1) "the danger of prejudice;" (2) "the length of the delay and its potential impact on judicial proceedings;" (3) "the reason for the delay, including whether it was within the reasonable control of the movant;" and (4) "whether the movant acted in good faith."[18] In contrast, relief under Rule 60(b)(6) is

---

[13]   Fed. R. Civ. P. 60(b), made applicable to bankruptcy cases by Fed. R. Bankr. P. 9024.

[14]   Deeters v. Wells Fargo Bank, N.A. (In re Deeters), No. 15-70570-JAD, 2017 WL 4990449, at *2 (Bankr. W.D. Pa. Oct. 27, 2017); see In re Matters Involving Prof'l Conduct of Mazzei, No. MISC. 14-00205-GLT, 2014 WL 4385746, at *3 (Bankr. W.D. Pa. Sept. 4, 2014).

[15]   Pioneer Investment Services v. Brunswick Assoc., 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (interpreting "excusable neglect" for purposes of Fed. R. Bankr. P. 9006(b)).

[16]   Id. at 388.

[17]   Id. at 395; see Chemetron Corp. v. Jones, 72 F.3d 341, 349 (3d Cir. 1995).

[18]   Pioneer, 507 U.S. at 395; see Orie v. Dist. Attorney Allegheny Cty., 942 F.3d 151, 154–55 (3d Cir. 2019); Nara v. Frank, 488 F.3d 187, 194 (3d Cir. 2007).

reserved for "*extraordinary circumstances* where, without such relief, an *extreme and unexpected hardship* would occur."[19]

The Debtor asserts that he acted in good faith to cure the default within a reasonable amount of time but was delayed by factors outside his control.[20]  He attributes the delay in securing the funds to a communication lag with the retirement plan administrator caused by substantial health issues he and his daughter experienced.[21]  The Debtor also contends that the creditors are better off receiving payments from a completed plan and would be prejudiced by dismissal.[22]  Ultimately, the Court finds the Debtor cannot establish excusable neglect at this late stage.

Context is key.  The Code sets a maximum plan term.[23]  In this case, a temporary amendment to section 1329(d) of the Bankruptcy Code[24] authorized a post-confirmation plan modification that permitted the Debtor to extend payments up to 7 years (or 84 months).[25]  His undeniable failure to complete all payments within the plan term was cause for dismissal.[26]  But the Code does not *require* dismissal upon a material default at the plan's expiration.  Indeed, the United States Court of Appeals for the Third Circuit held that "bankruptcy courts retain

---

[19]   Sawka v. Healtheast, Inc., 989 F.2d 138, 140 (3d Cir.1993) (emphasis added); see Norris v. Brooks, 794 F.3d 401, 404 (3d Cir. 2015); Budget Blinds, Inc. v. White, 536 F.3d 244, 255 (3d Cir. 2008).

[20]   *Amended Motion to Reconsider Dismissal of Case*, Dkt. No. 201 at ¶ 16.

[21]   Id. at ¶¶ 8-10, 21.

[22]   Id. at ¶ 22.

[23]   Generally, neither a plan nor a plan modification may provide for payments over a period that is longer than five years.  See 11 U.S.C. §§ 1322(d), 1329(d).  Ironically, Congress imposed the five-year cap on chapter 13 plans to protect debtors from the perceived involuntary servitude of wage payment plans which commonly ranged from seven to ten years.  See In re Klaas, 858 F.3d 820, 830 (3d Cir. 2017) (citing H.R. Rep. No. 95-595, at 117 (1977)).

[24]   Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific sections shall be to the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23, 11 U.S.C. § 101, *et seq*. All references to "Bankruptcy Rule" shall be to the Federal Rules of Bankruptcy Procedure.

[25]   See In re Roebuck, 618 B.R. 730, 731 (Bankr. W.D. Pa. 2020).

[26]   See 11 U.S.C. § 1307(c)(6).

discretion under the Bankruptcy Code to grant a reasonable grace period for debtors to cure an arrearage."[27]   And the considerations informing such an exercise of discretion are not dissimilar to the *Pioneer* factors.[28]   So based on his representations, the Court granted the Debtor nearly seven months to cure his plan default before concluding that no further extensions were appropriate and dismissed the case.[29]   In other words, the Court found that an additional month of grace was *unreasonable*.

Fundamentally, reconsideration is not a vehicle "to simply 'ask the Court to rethink what the Court had already thought through—rightly or wrongly.'"[30]   Yet the Debtor essentially begs the Court to re-weigh the same considerations that did not yield a further grace period in January to excuse his neglect in February.   The Debtor's hardships and their apparent impact on his ability to access his retirement funds were known to the Court.[31]   As was his continued wage attachment.[32]   The only real difference now is that the funds are in the trustee's

---

[27]   In re Klaas, 858 F.3d at 828.

[28]   Id. at 832 ("we conclude the non-exhaustive list of factors a bankruptcy court should consider in deciding whether to allow a grace period include: (1) whether the debtor substantially complied with the plan, including the debtor's diligence in making prior payments; (2) the feasibility of completing the plan if permitted, including the length of time needed and amount of arrearage due; (3) whether allowing a cure would prejudice any creditors; (4) whether the debtor's conduct is excusable or culpable, taking into account the cause of the shortfall and the timeliness of notice to the debtor; and (5) the availability and relative equities of other remedies, including conversion and hardship discharge.").

[29]   In time, everything ages, wears, and ultimately decays, including excuses.   As a result, equity will eventually turn against even the most sympathetic stories because circumstances will continue to evolve around them.   As a practical matter, that means the burden to establish cause for an extension (for any purpose) grows with each request.

[30]   Butko v. Ciccozzi (In re Butko), 624 B.R. 338, 367 (Bankr. W.D. Pa. 2021) (quoting Above the Belt, Inc. v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983)).

[31]   It is notable that the Debtor relies on the same general representations made by counsel rather than offering a more fulsome sworn statement.   The Court does not doubt that he and his daughter had health challenges in the last seven months.   The issue is that no attempt is made to explain why those challenges reasonably resulted in seven months of stagnation.

[32]   During the life of a chapter 13 plan, consistent remittances through wage attachment are evidence of good faith.   Once the plan term has expired, however, their significance diminishes in proportion to any arrearage.   Regular payments are still objectively good, but good faith demands that a debtor do more to cure a material default than simply "keep on keeping on."   That is particularly true where, as here, the

possession.  Unfortunately, the *eventual* ability to cure a payment default in chapter 13 is not itself a basis to vacate a prior dismissal.[33]  Finality requires more, and the Debtor offers nothing else.[34]  The lesson here is that a debtor cannot reasonably expect to stack a grace period under *Klaas* with an additional period of excusable neglect following dismissal.

Alternatively, the Debtor argues that reconsideration under Rule 60(b)(6) is appropriate "because Debtor had substantially completed his case" and "but for extraordinary circumstances that caused his default, he could have completed his Plan payments when required."[35]  In support, he cites three cases in which courts found cause under Rule 60(b)(6) to reinstate chapter 13 cases that were dismissed for lack of payment.[36]  Only one involved an expired plan and was otherwise factually distinct.[37]

Even assuming the circumstances that lead to the Debtor's default and delayed cure were "extraordinary,"[38] he has not explained how it will result in "*extreme and unexpected hardship*."[39]  Or even ordinary hardship for that matter.  Rather, the Debtor focuses on a lack of

---

sizeable plan arrearage was attributable to irregular lump sum obligations and grew despite the Debtor's regular wage attachment.

[33]  See In re Strickler, No. 23-20004-GLT, 2024 WL 1145669, at *2 (Bankr. W.D. Pa. Mar. 15, 2024).

[34]  There is a misconception in consumer cases that remedying a mistake or omission (like a payment default) is enough to warrant another chance.  This not only detaches reconsideration from its standard as "an extraordinary remedy to be granted sparingly," In re Grigg, 2013 WL 5945793, at *2, but crashes through the guardrails imposed on chapter 13 by the Code and *Klaas*.  In fact, one might reasonably ask what limits still apply if "money talks" is the only guiding concern.  Could a debtor reinstate a case a year later to complete an expired plan?  If so, how about treating dismissal during the plan term as a voluntary suspension and seek reinstatement later?  Obviously, none of that is what Congress intended or enacted.

[35]  *Amended Motion to Reconsider Dismissal of Case*, Dkt. No. 201 at ¶ 17.

[36]  See Geberegeorgis v. Gammarino (In re Geberegeorgis), 310 B.R. 61 (B.A.P. 6th Cir. 2004); In re Smallwood, 592 B.R. 178 (Bankr. S.D. Ohio 2017); Aubain v. LaSalle Nat'l Bank (In re Aubain), 296 B.R. 624 (Bankr. E.D.N.Y. 2003).

[37]  See In re Aubain, 296 B.R. at 630-32.

[38]  For the reasons stated in footnote 31, *supra*, the Court lacks sufficient information regarding the correlation between the Debtor's hardships and the withdrawal process.

[39]  Sawka v. Healtheast, Inc., 989 F.2d at 140 (emphasis added).

7

prejudice to creditors and the potential benefit of a final plan distribution.[40]   Of course, the

Debtor could avoid such prejudice by paying the same retirement funds to those creditors outside

of bankruptcy.   The only difference is that he would not receive a discharge, which is hardly

"unexpected" following a material plan default.   A review of the claims register suggests the

Debtor has a relatively modest amount of dischargeable unsecured debt.[41]   And unlike the debtor

in *In re Aubain*, he has not modified the rights of any creditors such that dismissal would work a

"palpable injustice" by restoring their prepetition rights.[42]   The Court discerns no extremity to

these circumstances.

In sum, the Debtor has not shown cause for reconsideration.   Whatever prejudice

he suffers is merely the natural consequence of his inability to complete his side of the chapter

13 bargain as the Code requires.   While this may seem harsh with money in hand, the Debtor was

afforded a generous grace period before dismissal—stretching *Klaas* to its breaking point—and

then still needed more time.   But chapter 13 is not open-ended, so there is inevitably a moment

when a default crystalizes and becomes irreversible.   That is the system Congress created and

neither *Klaas* nor Rule 60(b) change that.

---

[40]      *Amended Motion to Reconsider Dismissal of Case*, Dkt. No. 201 at ¶ 22.

[41]      See *Claim Nos. 1, 2, 4, 6, 7, and 8*, Claims Register Case No. 18-22681-GLT (totaling $10,677.13).   The Court also notes that not every claim filed is enforceable or will be enforced outside of bankruptcy.

[42]      In re Aubain, 296 B.R. at 633-34.

8

## IV.    CONCLUSION

In light of the foregoing, the motion for reconsideration must be denied.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052.  The Court will issue a separate order consistent with this opinion.

ENTERED at Pittsburgh, Pennsylvania.

Dated: May 21, 2026

GREGORY L. TADDONIO
CHIEF UNITED STATES BANKRUPTCY JUDGE

Case administrator to mail to:
Debtor